J-S14010-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES ROBINSON, | : | |
| | : | |
| Appellant | : | No. 3612 EDA 2013 |

Appeal from the Judgment of Sentence December 6, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0001552-2007

BEFORE:  DONOHUE, OLSON and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED APRIL 14, 2015**

Appellant, James Robinson ("Robinson"), appeals from the judgment of sentence entered on December 6, 2013 by the Court of Common Pleas of Philadelphia County, Criminal Division, following his convictions for third-degree murder, persons not to possess a firearm, and carrying a firearm on public streets or public property in Philadelphia.[1]  For the reasons that follow, we affirm.

We summarize the relevant facts and procedural history of this case as follows.  On the afternoon of June 11, 2004, Robinson, Michael Brooks ("Brooks"), Jarrett Stiff ("Stiff"), Hassan East ("East"), and Heath Caudle ("Caudle") were playing a game of craps on Caudle's porch.  During the course of the afternoon, Robinson won a significant amount of money from

---

[1]  18 Pa.C.S.A. §§ 2502(c), 6105(a)(1), 6108.

the other participants.  As the game continued, Brooks began arguing with and berating Robinson, referring to him as an "ass bettor"[2] and accusing him of failing to pay back a prior gambling debt.  Eyewitness testimony indicated that in the midst of this argument, Robinson left Caudle's porch and walked to his pickup truck.  A couple of minutes later, as he was walking back towards Caudle's porch, Robinson pulled out a nine-millimeter handgun and fired approximately three to five shots in the direction of the porch.  One of the shots struck Brooks in the neck, severing his spinal cord, several veins and arteries, and killing him within minutes.

Robinson's first jury trial took place in February and March of 2012 before the Honorable Lillian H. Ransom.  Robinson's first trial ended in a mistrial on March 8, 2012, after the jury indicated that it was unable to reach a verdict.  Robinson's second jury trial took place in September 2013 before the Honorable Jeffrey Minehart.  At this trial, the Commonwealth presented the eyewitness testimony of Stiff, East, and Caudle, each of whom identified Robinson as the individual who shot Brooks.  While Stiff and Caudle testified at Robinson's second trial that they did not observe the shooting, the Commonwealth presented as substantive evidence their signed statements to police and testimony from Robinson's first trial that they saw Robinson shoot Brooks.  The Commonwealth also presented the testimony of

---

[2] In gambling parlance, an "ass bettor" is someone who bets money that he or she does not have.  *See* N.T., 9/19/13, at 26.

Tallena Chesney ("Chesney"), Robinson's girlfriend at the time of the shooting, who testified that Robinson admitted to her that he shot Brooks.

On September 24, 2013, the jury found Robinson guilty of third-degree murder and carrying a firearm on public streets or public property in Philadelphia. A nonjury proceeding immediately followed during which the Commonwealth presented evidence that Robinson had a prior conviction of burglary. Therefore, the trial court found Robinson guilty of persons not to possess a firearm, the prohibition against convicted felons carrying firearms. On December 6, 2013, the trial court sentenced Robinson to eighteen to thirty-six years of incarceration. On December 16, 2013, Robinson filed a timely notice of appeal.

On appeal, Robinson raises the following issues for our review and determination:

> 1. Did not the trial court err in allowing the prosecutor to elicit testimony from [Stiff] that he and [Robinson] were codefendants in an unrelated federal case, even though the motion in limine court ruled that such testimony was inadmissible?
>
> 2. Did not the trial court err in preventing defense counsel from fully exploring the benefits [East] could receive from testifying for the government, specifically by preventing defense counsel from exploring the drug possession charges against [East] that were withdrawn as well as the further reductions in sentence that he may receive?
>
> 3. Did not the trial court deny [Robinson] his right to present a defense, by restricting defense counsel from presenting relevant admissible evidence,

specifically evidence concerning the statements of Robert Larry and Barbara Dantzler to police, that cast [Robinson]'s guilt into doubt?

4. Did not the trial court err in refusing to grant a mistrial due to the prosecutor's misconduct in closing arguments?

Robinson's Brief at 3-4.

The first three issues that Robinson raises on appeal each relate to evidentiary decisions made by the trial court. Our standard of review regarding evidentiary issues is as follows:

> "The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." **Commonwealth v. Sanchez**, 36 A.3d 24, 48 (Pa. 2011) (citations omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Hanford**, 937 A.2d 1094, 1098 (Pa. Super. 2007) (citation omitted), *appeal denied*, [] 956 A.2d 432 (Pa. 2008). Furthermore, "if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." **Commonwealth v. Weakley**, 972 A.2d 1182, 1188 (Pa. Super. 2009) (citation omitted), *appeal denied*, [] 986 A.2d 150 (Pa. 2009).

**Commonwealth v. Glass**, 50 A.3d 720, 724-25 (Pa. Super. 2012).

For his first issue on appeal, Robinson argues that the trial court violated the coordinate jurisdiction rule. Robinson's Brief at 22-26. The

record reflects that at a pretrial motion in limine hearing held prior to Robinson's first trial, Judge Ransom ruled that while Stiff could testify against Robinson, he could not testify that he was Robinson's codefendant in an unrelated federal case. N.T., 2/21/12, at 25-33. Robinson asserts that the trial court erred by allowing Stiff to testify at Robinson's second trial that he was Robinson's codefendant in the unrelated case. Robinson's Brief at 22-26.

Our Court has stated the following in regards to the coordinate jurisdiction rule:

> The coordinate jurisdiction rule, put simply, states that "judges of coordinate jurisdiction should not overrule each other's decisions." *Zane v. Friends Hosp.*, [] 836 A.2d 25, 29 ([Pa.] 2003). The rule, applicable in both civil and criminal cases, "falls within the ambit of the 'law of the case doctrine.'" *Riccio v. American Republic Ins. Co.*, [] 683 A.2d 1226, 1230 ([Pa. Super.] 1996) (citing *Commonwealth v. Starr*, [] 664 A.2d 1326, 1331 ([Pa.] 1995)). Our Supreme Court explained in *Starr* that the law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Id.* at 1331. "Among the related but distinct rules which make up the law of the case doctrine" is the rule that "upon transfer of a matter between trial judges of coordinate jurisdiction, the transferee trial court may not alter the resolution of a legal question previously decided by the transferor trial court." *Id.*

*Commonwealth v. King*, 999 A.2d 598, 600 (Pa. Super. 2010).

We conclude that this issue is meritless because the coordinate jurisdiction rule is inapplicable to this issue. Our Supreme Court has long held:

> When a court grants a new trial, the necessary effect thereof is to set aside the prior judgment and leave the case as though no trial had been held. … By the operation of an order granting a new trial, the cause, in contemplation of law, is precisely in the same condition as if no previous trial had been held.

*Commonwealth v. Hart*, 387 A.2d 845, 847 (Pa. 1978) (quoting *Commonwealth ex rel. Wallace v. Burke*, 45 A.2d 871 (Pa. Super. 1951)).

This case is procedurally similar to *Commonwealth v. Paddy*, 800 A.2d 294 (Pa. 2002). In that case, at defense counsel's request pretrial, the trial court excluded statements made by a homicide victim regarding threats made to her prior to her death as being inadmissible hearsay. *Id.* at 301-02. The jury ultimately was unable to reach a verdict in the case, resulting in a mistrial. *Id.* at 302. At retrial, counsel did not seek to exclude these statements, and the Commonwealth presented this testimony. *Id.*

Following his conviction of first-degree murder, the defendant appealed, asserting that counsel was ineffective, inter alia, for failing to exclude the victim's statements, as the trial court's exclusion of those statements in the first trial precluded their admission in the second trial pursuant to the law of the case doctrine. *Id.* at 309. Our Supreme Court

disagreed, concluding: "Because the grant of a new trial 'wipes the slate clean,' so that a previous court's ruling on the admissibility of evidence generally does not bind a new court upon retrial, it is not evident that the [law of the case] doctrine applies in the present procedural context." *Id.* at 311 (internal citations omitted).

The case at bar, like *Paddy*, was a retrial following a mistrial that resulted from a hung jury. As the coordinate jurisdiction rule is inapplicable upon retrial, this issue is meritless and does not entitle Robinson to any relief.

For his second issue on appeal, Robinson argues that the trial court improperly prevented defense counsel from fully questioning East about the benefits he was receiving for testifying on behalf of the Commonwealth. Robinson's Brief at 27-31. Specifically, Robinson complains that the trial court erred by preventing defense counsel from questioning East about drug possession charges against him that the federal government withdrew and the possible sentencing reductions that he could receive in an unrelated criminal matter for testifying. *Id.* at 27-29.

We conclude that this argument is meritless. The record reflects that the trial court did sustain defense counsel's objection to the question: "So what happened actually is the marijuana case was withdrawn?" N.T., 9/18/13, at 140-41. However, the trial court also permitted the following two questions: "Were you arrested for having drugs in prison?" and "While

- 7 -

you are a witness against [Robinson], you have committed crimes in jail that were withdrawn, is that correct, where the charges were withdrawn against you?" *Id.*

Furthermore, during Robinson's second trial, the jury heard extensive testimony relating to past and potential future benefits East either received or hoped to receive in exchange for his cooperation with the federal government. Both East and an FBI agent testified that by cooperating with the federal government, East had been able to avoid a life sentence on his federal robbery charges, and instead received a lesser sentence of thirty years of incarceration. N.T., 9/18/13, at 94-97, 115-20; N.T., 9/19/13, at 135-44. Additionally, both East and the FBI agent testified that East could receive additional sentencing reductions based on his testimony in this case. N.T., 9/18/13, at 116-20, 125; N.T., 9/19/13, at 144-45, 154-55. Thus, the jury heard a significant amount of evidence that East's testimony was potentially motivated by benefits promised to him by the federal government in his own criminal matters. Accordingly, Robinson's second issue is meritless.

For his third issue on appeal, Robinson argues that the trial court erred by preventing him from presenting to the jury statements made to police by Robert Larry ("Larry") and Barbara Dantzler ("Dantzler"). Robinson's Brief at 31-38. Robinson asserts that he should have been able to present this

evidence to the jury because it implicates other persons in Brooks' murder. *Id.* at 31-32, 35-38.

The record reflects that Larry informed the police in his statement that Timothy Alfonzo ("Alfonzo") told him that Alfonzo heard that a "young boy" had shot and killed Brooks while they were gambling on Caudle's porch. Larry's Statement, 6/12/04, at 1-2. Dantzler told police in her statement that she originally told her employer that her grandson, Henry Brown, may have been responsible for shooting Brooks. Dantzler's Statement, 6/17/04, at 1. In that same statement, however, Dantzler also told police that she had lied about her grandson being involved in the shooting to avoid getting into trouble for missing work. *Id.* at 3. Dantzler informed police that she had heard about the murder from people she was with the night she missed work. *Id.* Because these statements represent multiple layers of inadmissible hearsay, we agree with the trial court's decision to exclude this evidence.[3]

Hearsay is an out of court statement made by the declarant that a party offers into evidence to prove the truth of the matter asserted in the statement. Pa.R.E. 801(c). In general, hearsay is not admissible, except as provided by the Pennsylvania Rules of Evidence, by other rules prescribed by the Pennsylvania Supreme Court, or by statute. Pa.R.E. 802. "The rationale

---

[3] We note that "[w]e can affirm the [trial] court's decision if there is any basis to support it, even if we rely on different grounds to affirm." *Commonwealth v. Lewis*, 39 A.3d 341, 345 (Pa. Super. 2012).

for the hearsay rule is that hearsay is too untrustworthy to be considered by the trier of fact." ***Commonwealth v. Charlton***, 902 A.2d 554, 559 (Pa. Super. 2006) (quotations and citation omitted).

Additionally, "[a]n out-of-court declaration containing another out-of-court declaration is double hearsay." ***Commonwealth v. Laich***, 777 A.2d 1057, 1060 (Pa. 2001) (citation omitted). "In order for double hearsay to be admissible, the reliability and trustworthiness of each declarant must be independently established. This requirement is satisfied when each statement comes within an exception to the hearsay rule." ***Id.*** (quotations and citations omitted). Thus, "[d]ouble hearsay is admissible if each part conforms to a hearsay exception." ***Commonwealth v. Hardy***, 918 A.2d 766, 777 (Pa. Super. 2007) (citing Pa.R.E. 805).

After reviewing Larry's and Dantzler's statements, we conclude that the trial court did not abuse its discretion by excluding both statements. Larry's and Dantzler's statements include multiple levels of hearsay. Neither Larry nor Dantzler testified at trial. In the statements they gave to police, Larry and Dantzler provided police with information about Brooks' murder that they received from other sources. ***See*** Larry's Statement, 6/12/04, at 1; Dantzler's Statement, 6/17/04, at 3. In turn, those sources are either completely unidentified or did not witness Brooks' murder first-hand. ***See id.*** Larry's statement conveyed information about Brooks' murder that he learned from Alfonzo, who did not witness the shooting first-hand. ***See***

Larry's Statement, 6/12/04, at 1-2. Dantzler's statement conveyed information about Brooks' murder that she learned from unidentified people she was with the night of Brooks' death. Dantzler's Statement, 6/17/04, at 3. Additionally, Robinson sought to introduce both statements at Robinson's trial to prove the truth of the matter asserted in the statements, that someone else was responsible for Brooks' murder. *See id.* at 31-32, 35-38. Furthermore, each of the multiple levels of hearsay present in both statements do not conform to any hearsay exception. Thus, we have no basis on which to conclude that Larry's and Dantzler's statements were not prohibited by the rule against hearsay. Accordingly, the trial court properly excluded both statements.

For his final issue on appeal, Robinson argues that the trial court erred in refusing to grant a mistrial because of prosecutorial misconduct that occurred during closing arguments. Robinson's Brief at 38-44. Robinson claims that the prosecutor improperly referenced his decision not to testify, which served no other purpose than to distract the jury from its proper focus. *Id.* Therefore, Robinson contends that the trial court erred in denying his request for a mistrial. *Id.* at 44.

Our standard of review for claims of prosecutorial misconduct is as follows:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our

> attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Toritto*, 67 A.3d 29, 37 (Pa. Super. 2013) (en banc), *appeal denied*, 80 A.3d 777 (Pa. 2013) (quoting *Commonwealth v. Lewis*, 39 A.3d 341, 352 (Pa. Super. 2012)). Therefore, "we focus not on the culpability of the prosecutor but rather on whether his actions deprived [the appellant] of a fair trial by prejudicially rendering the jury incapable of fairly weighing the evidence and entering an objective verdict." *Commonwealth v. Melvin*, 103 A.3d 1, 27 (Pa. Super. 2014). Additionally, this Court has stated that a "remark by a prosecutor, otherwise improper, may be appropriate if it is in [fair] response to the argument and comment of defense counsel." *Commonwealth v. Collins*, 70 A.3d 1245, 1253 (Pa. Super. 2013) (brackets in original) (quoting *Commonwealth v. Chmiel*, 889 A.2d 501, 543-44 (Pa. 2005)), *appeal denied*, 80 A.3d 774 (Pa. 2013).

Robinson takes issue with the following portion of the prosecutor's closing argument:

> [PROSECUTOR]: Folks, the evidence here is overwhelming and the fact of the matter is -- and the judge is going to [instruct] about the burden of proof and reasonable doubt. The defense counsel stood up here and told you that [Robinson] said he's

- 12 -

not guilt[y], and the truth of the matter is … that when [Robinson] gets arraigned on the charges, that's not testimony --

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Well, no, he said it's not testimony. Go ahead.

[PROSECUTOR]: Now, [Robinson] has no burden to testify --

[DEFENSE COUNSEL]: Objection.

[PROSECUTOR]: He's not required to testify.

THE COURT: Overruled. We're going to charge them.

[PROSECUTOR]: You can't hold it against him if he doesn't testify. You can't infer anything from that, but he doesn't get anything special for that arraignment. That arraignment is not testimonial. It's not subject to cross-examination. And the fact of the matter is that -- it doesn't -- it's a nonentity as far as the evidence in this case is concerned.

The reality is [] if you think about it -- let's say [Robinson] when we're talking about Hassan East and Tallena Chesney, I mean, do you think that [defense counsel] as much outrage as he shows about witnesses cooperating, do you think that if he thought that his client had information that was [worthwhile] that he wouldn't recommend to him you should tell what you know --

[DEFENSE COUNSEL]: Objection.

THE COURT: Objection sustained. The jury is to disregard it. Let's move on.

N.T., 9/23/13, at 178-80.

- 13 -

We conclude that the trial court did not abuse its discretion in denying Robinson's request for a mistrial. First, the prosecutor made the above-referenced remarks relating to Robinson pleading not guilty at his arraignment in fair response to arguments made by defense counsel in his closing argument. During his closing, defense counsel referred to the fact that Robinson, at his arraignment, swore under oath that he was not guilty. *Id.* at 112. Thus, it was a fair response for the prosecutor to argue that the fact that Robinson pled not guilty at his arraignment does not constitute evidence of his innocence. *See id.* at 178-79.

Second, the prosecutor's remaining remarks, stating that if defendant's counsel thought Robinson had information that was worthwhile, that he would recommend to him that he should tell what he knows, did not prejudice Robinson. Defense counsel's objection prevented the prosecutor from completing his statement and the trial court sustained the objection, instructing the jury to disregard the prosecutor's remarks. *Id.* at 180. "A jury is presumed to follow a trial court's instructions[.]" *Commonwealth v. Reid*, 99 A.3d 470, 501 (Pa. 2014). Following closing arguments, the trial court further instructed the jury as follows:

> First of all, ladies and gentlemen, and I will emphasize this again, [Robinson] is presumed to be innocent and has certain rights and one of those rights is not to testify. It's a Constitutional right and there can be no inference of guilt or any other inference adverse to [Robinson] from the fact that he

- 14 -

> didn't testify, nor can any argument -- and the lawyer's arguments are just that, arguments.
>
> Any arguments about what [Robinson] knew or would have said, you must disregard and I sustained that objection. I want you to put that out of your mind, because the one thing you have to keep in mind is [Robinson] is presumed innocent and has an absolute right to remain silent.

N.T., 9/23/13, at 183-84. Our Supreme Court has held that "[a] mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." ***Commonwealth v. Chamberlain***, 30 A.3d 381, 422 (Pa. 2011). Therefore, there was no abuse of discretion in the trial court's determination that the challenged remarks did not require the remedy of a mistrial.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2015