**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Ronald M. SOLOMON, Appellant.**

Superior Court of Pennsylvania.

Argued June 21, 2011.

Filed July 22, 2011.

Norris E. Gelman, Philadelphia, for appellant.

Peter Carr, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., GANTMAN, and OTT, JJ.

OPINION BY GANTMAN, J.:

Appellant, Ronald M. Solomon, appeals from the judgment of sentence entered in the Philadelphia County Court of Common

Pleas, following his jury trial convictions for aggravated assault and possessing an instrument of crime ("PIC").[1] Appellant asks us to determine whether the prosecutor's comments during summation constituted misconduct justifying reversal. Appellant also challenges the court's order for payment of restitution directly to the victim rather than to the hospital. We hold the prosecutor's statements during closing were mere oratorical flair; they were also made in fair response to Appellant's demeanor and testimony at trial as well as his counsel's defense strategy and did not impede the jury from properly weighing the evidence and rendering a true verdict. We further hold the trial court correctly ordered Appellant to pay restitution directly to the victim rather than to the hospital, because the medical provider was not a direct-loss "victim" under the restitution statute. Accordingly, we affirm.

The trial court opinion set forth the relevant facts of this appeal as follows:

At around 11:45 p.m. on March 19, 2009, [the victim] left the Temptations nightclub in Philadelphia after a night of dancing and walked to the parking lot across the street to get his car. In the parking lot, [the victim] saw [Appellant] and an unidentified man who had just parked his car next to [the victim's]. Concerned that he would not be able to pull out of his parking spot because of the way the man's car was positioned, [the victim] asked the man to move his car. As the man began to walk back to his car, [Appellant] turned and yelled to [the victim], "If a nigger can't get his car out of that spot, he don't need no fucking car." [The victim] and [Appellant] then got into a heated argument until [the victim] got in his car to leave.

As [the victim] backed up out of his parking spot, he saw [Appellant] coming toward him with a gun. [The victim] ducked, accelerated the car, and drove to the lot's exit. [Appellant] fired his gun as [the victim] passed him, shattering one of the car's windows and striking [the victim] in the back of his shoulder. The force of the bullet caused [the victim] to lurch forward and lose control of his car, which he drove into a pole located near the parking lot's exit. After taking a moment to [recover], [the victim] drove out of the parking lot towards Temple University Hospital. He began having trouble breathing, however, and pulled his car over to the side of the road when he saw a police officer in front of a church on Germantown Avenue. [The victim] told the officer and the officer's partner about the shooting and described the shooter. The officers took [the victim] to Temple University Hospital where he remained for four days while he was treated for a gunshot wound before being transferred to a Veterans Administration hospital.

Doctors were unable to remove both the bullet and some of the pieces of shattered glass from [the victim's] car from his body because they were lodged too deeply inside him. The glass, in particular, continues to cause him serious pain. In addition to pain medication, [the victim] also required physical therapy during his recovery. The costs associated with [the victim's] treatment caused a substantial financial burden to him and his family.

(Trial Court Opinion, filed October 26, 2010, at 2–3). On March 25, 2010, the jury found Appellant guilty of aggravated assault and PIC. Appellant obtained new counsel for sentencing. On April 28, 2010, the court sentenced Appellant to an aggre-

---

1. 18 Pa.C.S.A. §§ 2702(a)(1), 907(a), respectively.

gate term of five (5) to ten (10) years' incarceration. Appellant timely filed a post-sentence motion on May 4, 2010, and a supplemental post-sentence motion on June 1, 2010. On July 16, 2010 and July 23, 2010, the court denied Appellant's post-sentence motion and supplemental post-sentence motion, respectively. Appellant filed a timely notice of appeal on July 29, 2010. On August 2, 2010, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a Rule 1925(b) statement on August 19, 2010.

Appellant raises two issues on appeal:

DOES PROSECUTORIAL MISCONDUCT IN SUMMATION COMPEL REVERSAL?

DID THE COURT ERR IN ORDERING RESTITUTION TO BE PAID DIRECTLY TO THE VICTIM AND NOT TO THE HOSPITAL WHOSE MEDICAL BILLS COMPRISE THE RESTITUTION ORDERED?

(Appellant's Brief at 4).

 Appellant first asserts the prosecutor commented inappropriately during closing arguments when he said Appellant's testimony was the most arrogant testimony the prosecutor had ever witnessed, Appellant was without remorse, and Appellant acted intentionally in the commission of the crime. Appellant alleges the prosecutor based these statements on matters outside of the record and attributed invented thoughts to Appellant. Appellant contends these statements were extraordinarily prejudicial, had no place in a proper summation, and exceeded the permissible bounds of vigorous prosecutorial advocacy. Appellant concludes the prosecutorial misconduct described compels reversal of his convictions. We cannot agree.

 "Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa.Super.2008). "In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one." *Id.* (quoting *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa.Super.2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007)).

[A] prosecutor's arguments to the jury are [generally] not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.

A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present [his] arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Rolan, supra* (quoting *Commonwealth v. May*, 587 Pa. 184, 197–98, 898 A.2d 559, 567 (2006), *cert. denied*, 549 U.S. 1022, 127 S.Ct. 557, 166 L.Ed.2d 414 (2006)).

In the present case, the trial court responded to Appellant's first issue as follows:

A. *Alleged Prosecutorial Misconduct*

[Appellant] claims that the assistant district attorney committed prosecutorial misconduct during his closing argument. The complained of portion of the assistant district attorney's closing argument is as follows:

The most unrepentive and arrogant testimony I've ever seen is from this [Appellant], unrepentive, completely unrepentive. He shot a guy in the back, says it's an accident. Did you sense any—even a hint of bad feeling from him? No because he did it on purpose. He's thinking that SOB got what he deserved.

[Appellant] claims that this argument was impermissible because: 1) it constituted "testimony from the prosecutor based on his personal experience in [c]ourt"; 2) the assistant district attorney improperly "attributed a statement to [Appellant] when he told the jury [Appellant] was thinking the 'SOB got what he deserved.'"; and 3) "the prosecutor gave his opinion as to the guilt of [Appellant] when he told the jury, 'he did it on purpose.'" This claim is without merit.

It is well established that in determining the prejudicial effect of an assistant district attorney's comments during closing argument, the comments in question "cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson,* 900 A.2d 887, 890 (Pa.Super.2006)[, *appeal denied,* 589 Pa. 720, 907 A.2d 1102 (2006)] (quoting *Commonwealth v. Correa* [444 Pa.Super. 621], 664 A.2d 607, 609 (Pa.Super.1995)[, *appeal denied,* 544 Pa. 673, 678 A.2d 364 (1996)]). A new trial is not required unless the "unavoidable effect" of the comments "would be to prejudice the jury, forming in their minds fixed bias and hostility toward [Appellant], so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Linder* [284 Pa.Super. 327], 425 A.2d 1126, 1128 (Pa.Super.1981) (quoting *Commonwealth v. Stoltzfus,* [462 Pa. 43, 61,] 337 A.2d 873, 882 (1975)).

In context, the assistant district attorney, in the challenged portion of his closing, was arguing that [Appellant's] trial testimony demonstrated a lack of remorse for his admitted act of having shot [the victim].[2] Such a comment on the appearance of [Appellant] as being arrogant and unrepentant was an attempt by the prosecutor to marshal the evidence on the issue of [Appellant's] criminal intent. The assistant district attorney was arguing that had this shooting been an accident, as the defense argued, that [Appellant] would have shown more remorse, which was completely absent from [Appellant's] testimony.

[2] [Appellant] claimed that as [the victim] drove his car out of the lot, a gun in [Appellant's] hand, which [Appellant] had pulled out of his pocket, accidentally discharged, striking [the victim].

Accordingly, the record establishes that when the prosecutor stated that [Appellant] "did it on purpose," the prosecutor was not stating a personal opinion, but rather was stating a conclusion that arguably followed from [Appellant's] testimony and demeanor. Similarly, the prosecutor's statement that [Appellant] was thinking "that SOB got what he deserved," was not an improper attribution of a statement to [Appellant], but rather an argument that the evidence established that [Appellant's] acts were intentional. Because [Appellant's] mental state at the time of the shooting was the principal issue in the case, the prosecutor was permitted to argue inferences from all the evidence, including [Appellant's] testimony and demeanor, on that pivotal issue.

It is, of course, true that a prosecutor should not premise his arguments on his personal experiences beyond the record of the trial. However, the prosecutor's comment that [Appellant's] testimony

was the "most unrepentive and arrogant testimony" the prosecutor had ever seen was mere oratorical flair that does not entitle [Appellant] to relief. *See Commonwealth v. Montalvo,* [604 Pa. 386, 426,] 986 A.2d 84, 108 (Pa.2009) (quoting *Commonwealth v. Tedford* [598 Pa. 639], 960 A.2d 1, 33 (Pa.2008) ([stating] "a prosecutor's statements are unobjectionable if they ... represent mere oratorical flair")).

(Trial Court Opinion at 3–5). The record supports the court's analysis.

Further, in the context of the trial as a whole, the prosecutor's comments were also fair response. *See Rolan, supra.* During opening arguments, Appellant's counsel said the victim was not a credible witness because he hired a lawyer stating, "[Victim] is a guy who knows that if he comes here and gets a guilty verdict, he gets money. That's what you are looking at. That's who the alleged honest complainant is." (N.T. Trial, 3/23/10, at 44). During cross examination, Appellant's counsel asked the victim to testify to Appellant's mindset at the time of the shooting. (*Id.* at 114–16). During closing arguments, Appellant's counsel suggested what the victim would have said if he were an honest person. (N.T. Trial, 3/24/10, at 160–61). During his closing argument, Appellant's counsel claimed that Appellant was telling the truth, in contrast to the victim. (*Id.*) Appellant's counsel also commented on the credibility of a Commonwealth witness as "not telling the truth" and even stated the Commonwealth would agree. (*Id.* at 161).

During cross-examination, Appellant was consistently evasive. (*Id.* 114–17). At times, Appellant disputed his previous statements, even after they were read back to him from the record. (*Id.* at 117–120). As an example, consider the following exchange at trial:

[Commonwealth]: So as you stand there in the parking lot and this car comes by, your hand is actually on the handle of the gun?

[Appellant]: On the handle of the gun, yes.

\* \* \*

[Commonwealth]: Sir, why were you holding the gun in your pocket if you think that it was no big thing, it was over?

[Appellant]: I wasn't holding it in my pocket.

[Commonwealth]: Well, when the car comes by, you reflexively pull your hand out of your pocket; that's your testimony?

[Appellant]: Yes.

[Commonwealth]: It was an involuntary reaction to what was happening around you?

[Appellant]: Yes.

[Commonwealth]: As you did that, you had a grip on this firearm?

[Appellant]: Yes

[Commonwealth]: So at the time your hands were in your pocket, you were gripping your firearm?

[Appellant]: No.

[Commonwealth]: No.

Your hand was in your pocket without your gun, but you just grabbed the gun when you pulled your hands out; is that your testimony?

[Appellant]: No.

[Commonwealth]: Well, explain to us how, when you pull your hand out of your pocket, this gun came with it if you weren't holding onto it while it was in your pocket.

[Appellant]: That gun could be in my pocket every day, as it has for ten years, and I never touch it until I take it out or put it in. You don't have to hold your

gun when you have your hand in your pocket, mess around and shoot yourself.

[Commonwealth]: Exactly.

Now, sir, you are telling me that you didn't feel that there was a threat at that point once the guy went back and got in his car?

[Appellant]: Exactly.

[Commonwealth]: And you certainly didn't have time to make a conscious decision to put your hand on the grip of the gun and grab it once he started pulling forward in that two seconds.

[Appellant]: Right.

[Commonwealth]: So explain to the jury, if you did not intentionally grab this gun and did not have this gun in your hand in your pocket, how you pulled this gun out as the victim drove by?

[Appellant]: All I can say to you is, I wasn't holding onto my gun before he— before he started screeching, and when my hand came out of my pocket, my gun was in my hand. He scared me, evidently.

\* \* \*

[Commonwealth]: You know he was shot in the back, right?

[Appellant]: No, I don't know he got shot in the back.

[Commonwealth]: You don't know he was shot in the back?

[Appellant]: When you say the "back," what do you mean by the "back"?

[Commonwealth]: I mean, not the front of his person, the back of his person.

[Appellant]: My understanding was he was shot here. That's, yes, technically, the back, but it's the top of his shoulder. If he's leaning forward, he was shot there. What can I tell you?

(*Id.* at 108–14).

During cross examination, Appellant continued to demonstrate what could fairly be interpreted as an attitude of feigned confusion and unapologetic disbelief. (*Id.* at 120–34). Given the overall context of the trial, the prosecutor's closing argument, including the statements at issue, was consistent with the evidence and the Commonwealth's theory of the motive for the crimes charged. As well, they were made in fair response to Appellant's demeanor, testimony at trial and his counsel's defense strategy.[2] *See Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79 (1998), *cert. denied,* 528 U.S. 810, 120 S.Ct. 41, 145 L.Ed.2d 38 (1999) (holding no new trial was warranted based on allegations of prosecutorial misconduct in closing arguments, where prosecutor's statements involved fair response to defense evidence and closing remarks and prosecutor's request to convict based on defendant's actions; prosecutor did not personally vouch for credibility of witness but merely argued witness' testimony supported guilty verdict); *Commonwealth v. Craig Williams,* 532 Pa. 265, 615 A.2d 716 (1992) (holding no new trial was warranted based on allegations of prosecutorial misconduct in closing arguments, where prosecutor's statement was based on evidence as to how jury should resolve conflicting testimony; arguments on how jury should

---

**2.** Appellant's counsel brought in forty-two character witnesses to stipulate under oath to Appellant's "reputation for being truthful, peaceful, and law abiding." (N.T. Trial, 3/24/10, at 28–33) along with four character witnesses who testified on Appellant's behalf. (*Id.* at 34–55). Both the victim and Appellant testified. The jury had ample opportunity to

accept or reject Appellant's version of the events outside of the closing arguments. In light of Appellant's heavyweight defense strategy, we fail to see how the prosecutor's few challenged comments during closing had the unavoidable effect of leading the jury to a false verdict. *See Rolan, supra.*

resolve conflicting testimony are not considered expressions of personal opinion if based or relate back to evidence presented at trial; rejecting "cumulative impact" of various claims of prosecutorial misconduct as makeweight or bootstrapping, where no number of failed claims can collectively attain merit if they could not do so individually); *Commonwealth v. Phillips*, 398 Pa.Super. 58, 580 A.2d 840 (1990), *appeal denied*, 527 Pa. 643, 593 A.2d 417 (1991) (holding no new trial was warranted based on prosecutorial misconduct in closing arguments, where prosecutor's comments did not rise to level of inventing facts not of record; claim of prosecutor's vilification of defense counsel also failed to garner relief where defendant did not explain precise manner in which contested comments created such bias and hostility in jurors' minds as to hinder objective view of evidence; prosecutor did not improperly attempt to arouse sympathy of jury by going outside record or inventing testimony on behalf of victim).[3] Therefore, we have no reason to disturb the verdict on the grounds alleged. *See Rolan, supra.* Thus, Appellant's first issue merits no relief.

■ Next, Appellant argues the court should have ordered him to pay restitution of $59,400.00 directly to the hospital to cover the victim's hospital costs, and not to the victim. Appellant asserts: (1) if Appellant pays the victim, the money might not reach the hospital; and (2) it would be more cost effective to pay the money straight to the hospital. Appellant maintains there is no reason to distinguish between an insurance company (which the

statute includes in the definition of "victim") and a medical provider. Appellant concedes the current case law goes against his contention. Appellant concludes the court erred in refusing to allow Appellant to pay restitution directly to the hospital in this case. We disagree.

■ The interpretation and "application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." *Commonwealth v. Anthony B. Williams*, 871 A.2d 254, 262 (Pa.Super.2005). "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." *In re Wilson*, 879 A.2d 199, 214 (Pa.Super.2005) (*en banc*).

The statute governing restitution provides in pertinent part as follows:

**§ 1106. Restitution for injuries to person or property**

**(a) General rule.**—Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime, or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

\* \* \*

**(c) Mandatory restitution.**—

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so

---

**3.** *Cf. Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233 (1976) (holding new trial was warranted based on prosecutorial misconduct in closing arguments, where prosecutor indicated: (a) justice system went overboard to protect rights of accused; (b) there was additional evidence of guilt within prosecutor's knowledge that prosecutor could not present; (c) defendant's hatred of law enforcement; (d) defendant's position as mastermind of attack; (e) defendant's plan to fool jury by claiming police brutality; (f) unequivocal, direct expression of defendant's guilt of first degree murder).

as to provide the victim with the fullest compensation for the loss. The court shall not reduce a restitution award by any amount that the victim has received from the Crime Victim's Compensation Board or other governmental agency but shall order the defendant to pay any restitution ordered for loss previously compensated by the board to the Crime Victim's Compensation Fund or other designated account when the claim involves a government agency in addition to or in place of the board. The court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company.

(ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) The victim.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

(i) Shall consider the extent of injury suffered by the victim, the victim's request for restitution as presented to the district attorney in accordance with paragraph (4) and such other matters as it deems appropriate.

(ii) May order restitution in a lump sum, by monthly installments or according to such other schedule as it deems just.

(iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

(iv) Shall consider any other preexisting orders imposed on the defendant, including, but not limited to, orders imposed under this title or any other title.

(3) The court may, at any time or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, alter or amend any order of restitution made pursuant to paragraph (2), provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

(4)(i) It shall be the responsibility of the district attorneys of the respective counties to make a recommendation to the court at or prior to the time of sentencing as to the amount of restitution to be ordered. This recommendation shall be based upon information solicited by the district attorney and received from the victim.

(ii) Where the district attorney has solicited information from the vic-

tims as provided in subparagraph (i) and has received no response, the district attorney shall, based on other available information, make a recommendation to the court for restitution.

(iii) The district attorney may, as appropriate, recommend to the court that the restitution order be altered or amended as provided in paragraph (3).

\* \* \*

**(e) Restitution payments and records.**—Restitution, when ordered by a judge, shall be made by the offender to the probation section of the county in which he was convicted or to another agent designated by the county commissioners with the approval of the president judge of the county to collect restitution according to the order of the court or, when ordered by a magisterial district judge, shall be made to the magisterial district judge. The probation section or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution and the magisterial district judge shall maintain records of the restitution order and its satisfaction and shall forward to the victim the property or payments made pursuant to the restitution order.

\* \* \*

**(h) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

**"Crime."** Any offense punishable under this title or by a magisterial district judge.

**"Injury to property."** Loss of real or personal property, including negotiable instruments, or decrease in its value, directly resulting from the crime.

**"Offender."** Any person who has been found guilty of any crime.

**"Personal injury."** Actual bodily harm, including pregnancy, directly resulting from the crime.

**"Property."** Any real or personal property, including currency and negotiable instruments, of the victim.

**"Restitution."** The return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court.

**"Victim."** As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929. [71 P.S. § 180–9.1] The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa.C.S.A. § 1106.

 "[T]he primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible." *Commonwealth v. Mariani,* 869 A.2d 484, 486 (Pa.Super.2005). "For the principles underlying the restitution statute to be implemented, the victims must be made whole." *Commonwealth v. Boone,* 862 A.2d 639, 644 (Pa.Super.2004). "The imposition of restitution is within the sound discretion of the sentencing court and must be supported by the record." *Commonwealth v. Opperman,* 780 A.2d 714, 718 (Pa.Super.2001), *appeal denied,* 568 Pa. 617, 792 A.2d 1253 (2001). The court is required to specify the amount of restitution at sentencing, but may modify its order at any time provided that it states its reasons for any modification on

the record. *See Commonwealth v. Dietrich*, 601 Pa. 58, 65, 970 A.2d 1131, 1135 (2009).

■ The legislature amended the restitution statute on May 3, 1995, effective July 2, 1995, which expanded the definition of "victim." *See Commonwealth v. Layhue*, 455 Pa.Super. 89, 687 A.2d 382, 384 (1996) (*en banc*). The term "victim" now includes the Crime Victim's Compensation Fund and any insurance company, if either has compensated the victim. 18 Pa.C.S.A. § 1106(h). "[T]he legislature intended that a criminal offender not only be required to provide restitution to the victim directly, but [also] to government agencies which indirectly provide reimbursement to the victim, including payment to a medical provider on the victim's behalf." *Commonwealth v. Brown*, 603 Pa. 31, 46, 981 A.2d 893, 902 (2009). Consistent with the statute, this Court has held that ordering restitution payments to the Crime Victim's Compensation Program is appropriate where that entity has paid a medical provider on the victim's behalf. *Commonwealth v. Keenan*, 853 A.2d 381, 383 (Pa.Super.2004) (holding court properly ordered defendant to pay restitution to Crime Victim's Compensation Program, where Program had approved payment to hospital; court amended its order to limit restitution to amount Crime Victim's Compensation Program paid directly to hospital). "Underlying this issue is the apparent policy that restitution is not meant to be a reimbursement system to third parties but rather a compensation system to 'victims' as that term is defined by the statute." *Id.* at 384. Therefore, current Pennsylvania law makes clear a court should not order the defendant to pay restitution directly to a medical provider "unless the medical provider itself is a victim, such status requiring that the provider's loss be caused directly by a defendant's criminal conduct rather than a loss merely consequential to such conduct. . . ." *Id.* (citing *Layhue, supra*).

In the present case, the trial court responded to Appellant's second issue as follows:

B. *Restitution*

[Appellant] claims that the [c]ourt erred by ordering [Appellant] to pay restitution to the complainant for medical expenses that the complainant incurred as a result of having been shot by [Appellant]. [Appellant] does [not] contest the amount of restitution ordered, but contends that the beneficiary of any restitution order should have been the hospital to which the money was owed, and not the complainant. In particular, [Appellant] argues that since "the hospital may well have been paid by insurance, VA coverage or by other means," the [c]ourt's order might result in double recovery by the complainant. This argument is without merit.

The sentencing code requires the trial court to order full restitution, without regard to ability to pay, where a defendant has been convicted of an offense for which the victim "suffered personal injury directly resulting from the crime." 18 Pa.C.S.A. § 1106(a), (c). The statute explicitly provides . . . "[t]he court shall not reduce a restitution award by any amount that the victim has received from an insurance company but shall order the defendant to pay any restitution ordered for loss previously compensated by an insurance company to the insurance company." 18 Pa.C.S.A. § 1106(c). Similarly, where a government entity such as the Crime Victim's Compensation Fund or Medicare compensates the victim, such entities are also entitled to an order of restitution in the amount of the compensation paid. *See* [*Brown, supra* at 902]; *see also* 18

Pa.C.S.A. § 1106(h) (defining "victim" to include "the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract"). The court is required to specify the amount of restitution at sentencing, but may modify its order at any time provided that it states its reasons for any modification on the record. *See* [*Dietrich, supra* at 1135].

Here, evidence was presented at the sentencing hearing that the victim incurred medical bills in the amount of $59,412.85 as a result of being shot by [Appellant]. The victim testified that none of the bills had been paid, that "welfare" had turned down coverage for the bills, and there was "a chance" that the VA might provide coverage. *Id.* [Appellant] did not dispute any of this information. He did contend, as he now argues on appeal, that the money should be paid to the hospital.

The court was required to assess the loss to the victim and order full restitution as of the date of the sentencing hearing. The record establishes that as of that date, [the victim] owed the full amount of the medical bills to the hospital, and that none of the bills had been paid by any party. Accordingly, the restitution order properly provided for full payment to the victim who at the time of sentencing had an outstanding obligation to pay the full amount of the bills. An order requiring [Appellant] to pay "restitution" to the hospital, which was very unlikely to ever be paid, would not extinguish [Appellant's] legal obligation to pay [the victim's] hospital bills. Moreover, there is no provision in the restitution statute that empowers a court to order that restitution be paid to a creditor of a victim: only parties who directly sustained a loss, or who paid compensation for such losses are entitled to be the beneficiaries of a restitution order. *See* 18 Pa.C.S.A. § 1106(a), (c), (h).

As stated above, the [c]ourt has the authority, at any time, to modify the restitution terms for good cause shown. That authority should address any double recovery issues that might arise should the victim, in the future, obtain medical coverage for his expenses. In any event, such a change in circumstances would not alter in any way the total amount of [Appellant's] restitution obligation, since any entities that pay the bills will be entitled to the full restitution. Accordingly, [Appellant's] challenge to the restitution order should be rejected.

(Trial Court Opinion at 6–8) (some internal citations omitted). We accept the court's reasoning, because current Pennsylvania law does not favor orders for restitution payments made directly to the medical provider, unless the medical provider is a direct loss "victim" under the restitution statute. *See Keenan, supra.*

Based upon the foregoing, we hold the prosecutor's statements during closing were mere oratorical flair; they were also made in fair response to Appellant's demeanor and testimony at trial as well as his counsel's defense strategy and did not impede the jury from properly weighing the evidence and rendering a true verdict. We further hold the trial court correctly ordered Appellant to pay restitution directly to the victim rather than to the hospital, because the medical provider was not a direct-loss "victim" under the restitution statute. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.