J-S52032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN BRAGG, JR. | |
| Appellant | No. 657 EDA 2014 |

Appeal from the Judgment of Sentence November 7, 2013
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0003233-2012

BEFORE:  GANTMAN, P.J., ALLEN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:          **FILED SEPTEMBER 09, 2014**

Appellant, John Bragg, Jr., appeals from the judgment of sentence entered in the Northampton County Court of Common Pleas, following his jury trial convictions for criminal attempt (criminal homicide), aggravated assault (serious bodily injury), aggravated assault (bodily injury with deadly weapon), and possessing instruments of crime ("PIC").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Appellant's parents are deceased, and Appellant's uncle ("Victim") is the administrator of their estate.  Appellant and his brother are the sole beneficiaries of the estate.  Following the death of Appellant's parents,

_____

[1] 18 Pa.C.S.A §§ 901(a) (2501 related); 2702(a)(1); 2702(a)(4); 907(a), respectively.

_____

*Former Justice specially assigned to the Superior Court.

Appellant and Victim had multiple disagreements over matters relating to the estate, specifically with respect to Victim's attempt to sell Appellant's parents' house (the sole asset in the estate), where Appellant had been residing. Victim initially listed the house for sale for approximately $100,000.00, but when Victim was unable to secure a buyer at that price or lower listing prices, Victim ultimately agreed to sell the house for $52,000.00. Appellant was unhappy with this sale price and tension ensued between Appellant and Victim.

On September 2, 2012, while Appellant was still living in his parents' house, Appellant asked Victim to come to the house to look at a leaking pipe in the basement. Victim was unavailable that day but agreed to stop by the next day. On September 3, 2012, Victim arrived at the house and both men headed to the basement, with Victim walking in front of Appellant. Appellant then pulled out a butcher knife and stabbed Victim in the back three times. Victim was able to push past Appellant, get outside, and call the police. Police arrested Appellant, and the Commonwealth subsequently charged him with criminal attempt (criminal homicide), two counts of aggravated assault, recklessly endangering another person ("REAP"), and PIC.

On September 9, 2013, a jury trial commenced. Appellant's theory of the case was that he stabbed Victim in self-defense. Specifically, Appellant maintained that Victim sexually abused him as a child numerous times. Appellant claimed that when Victim came to the house on September 3,

2012, the men argued over the sale price of the house and Victim stated: "I'm going to f*ck you on this house like I f*cked you when you were a kid." Appellant insisted Victim also threatened to retrieve his golf club from Victim's car and beat Appellant with it. Based on Victim's alleged prior sexual abuse and threats, Appellant contended he acted in self-defense when he stabbed Victim.

The Commonwealth rebutted the defense theory by presenting, *inter alia*, the testimony of Victim and testimony from Devon Emory, Appellant's cellmate in prison prior to trial. Mr. Emory testified that Appellant admitted he tried to kill Victim and that Appellant described the attack in detail to Mr. Emory, including how Appellant lured Victim to the house with a false story about a leaking pipe and hid a knife near the basement steps before Victim's arrival. Mr. Emory also stated Appellant planned to use the "Sandusky Defense" at trial (meaning Appellant was going to say Victim sexually assaulted Appellant, even though untrue) to justify Appellant's actions. Mr. Emory further indicated Appellant intended to kill Victim after Appellant was released from prison.

During closing arguments, the prosecutor made the following statement to the jury:

> [Appellant] knows how much damage he's doing. He knows that [Victim] is an educator. He knows what the allegation will do to him. And that's why he's doing it. It's a way to continue to victimize [Victim]. Instead of using a knife, he's using lies. And what wounds, ladies and gentleman, are going to last longer? The physical scars

that are etched into [Victim's] back, or the emotional scars caused when [Appellant] took the stand and spewed venomous lies about his own uncle? And what [Appellant] did on the stand belies victimization. It insults those who are actually victims of sexual assault because it causes us always to question the Sandusky defense.

(N.T. Trial, 9/11/13, at 19-20). Appellant objected to the prosecutor's remarks as prejudicial and beyond the scope of the case. The court overruled the objection. (*Id.* at 20).

On September 11, 2013, the jury convicted Appellant of criminal attempt (criminal homicide), two counts of aggravated assault, and PIC.[2] The court sentenced Appellant on November 7, 2013, to a term of ten (10) to twenty (20) years' imprisonment for the criminal attempt conviction, and imposed no further penalty for the remaining convictions. Appellant timely filed post-sentence motions on Monday, November 18, 2013, which the court denied on January 27, 2014. Appellant timely filed a notice of appeal on February 26, 2014. The next day, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on March 14, 2014.

Appellant raises one issue for our review:

_____

[2] During trial, the Commonwealth withdrew the REAP charge, and the verdict sheet confirms the jury did not convict Appellant of that crime. To the extent the certified record indicates the jury convicted Appellant of REAP and the conviction merged for sentencing purposes, that is error and must be corrected.

DID THE PROSECUTOR'S CLOSING COMMENTS UNDULY PREJUDICE APPELLANT AND DEPRIVE HIM OF A FAIR TRIAL WHERE THE PROSECUTOR WARNED THE JURY THAT SHOULD IT ACCEPT [APPELLANT'S] DEFENSE IT WOULD NEGATIVELY IMPACT TRUE VICTIMS OF SEXUAL ASSAULT?

(Appellant's Brief at 7).

The relevant standard of review in this case is as follows:

Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.

A prosecutor's arguments to the jury are generally not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict.

A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present [her] arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Commonwealth v. Solomon*, 25 A.3d 380, 383 (Pa.Super. 2011), *appeal denied*, 615 Pa. 766, 40 A.3d 1236 (2012) (internal citations and quotation marks omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Paula A. Roscioli, we conclude Appellant's issue merits no relief. The trial court

- 5 -

opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed March 18, 2014, at 1-4) (finding: prosecutor's remarks responded to Appellant's theory that Victim sexually abused him as child and brought up past sex abuse on date of incident to threaten Appellant, and Victim's statements precipitated and created justification for Appellant's actions; prosecutor also referenced testimony from Commonwealth's witness, Mr. Emory, that Appellant intended to kill Victim on September 3, 2012, and planned to use "Sandusky Defense" (meaning Appellant was going to say Victim sexually assaulted Appellant, even though untrue) to justify Appellant's actions; prosecutor's comments were fair response to issue of sexual assault raised by Appellant at trial; viewing alleged improper remarks in context of whole summation, prosecutor's statements did not have unavoidable effect of forming in minds of jurors fixed bias or hostility; thus, Appellant's prosecutorial misconduct claim fails). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/9/2014

- 6 -

**IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA :

            **v.**                    :       **No.  3233-2012**

**JOHN BRAGG, JR.,**              :

               **Defendant.**       :

                            :

## STATEMENT PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

**AND NOW**, this 18th day of March 2014, we hereby make the following statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(a):

On or about February 26, 2014, this Court received a Notice of Appeal to the Superior Court of Pennsylvania from our January 27, 2014 Order of Court, in which we denied Defendant's post-sentence motions. On February 27, 2014, we issued an Order pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), directing Defendant to file of record and serve upon the undersigned a concise statement of the errors complained of on appeal, no later than twenty-one (21) days from the date of said Order. Defendant timely filed such a statement, in which he raises a single issue for appellate review.

In this statement, Defendant contends that this "Court committed reversible error by permitting the attorney for the Commonwealth, over objection, to comment to the [j]ury during closing arguments that should the [j]ury believe Defendant's claim of self-defense it would work an injustice upon

other true victims of sexual assault." (Def.'s Statement, p.1). We disagree, and believe that Defendant has mischaracterized the statements of the prosecutor.[1]

The state of the law in our Commonwealth on the issue of prosecutorial misconduct is that "comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds a fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Commonwealth v. Jones*, 668 A.2d 491, 511 (Pa. 1995). Furthermore, the Commonwealth's attorney is "entitled to comment during closing arguments on matters that might otherwise be objectionable or even outright misconduct, where such comments constitute fair response to matters raised by the defense, or where they are merely responsive to actual evidence admitted during a trial." *Commonwealth v. Culver*, 51 A.3d 866, 876 (Pa. Super. 2012). Moreover, "prosecutorial misconduct will not be found where comments were based on the evidence or were proper inferences therefrom or were only oratorical flair." *Jones*, supra, at 514.

---

[1] This issue was raised by Defendant in his post-sentence motions. In our Opinion and Order of January 27, 2014 disposing of those motions, we concluded that Defendant had waived the issue of prosecutorial misconduct because he had failed to move for a mistrial or request a curative instruction, based upon *Commonwealth v. Brown*, 359 A.2d 393 (Pa. 1976). Having further reviewed the law on this issue, we have determined that the issue of prosecutorial misconduct was not in fact waived by Defendant, as the Court's overruling of counsel's objection rendered moot Defendant's obligation to further request a curative instruction or a mistrial. *Commonwealth v. McGeth*, 622 A.2d 940 (Pa. Super. 1993). Notwithstanding this determination, we believe that the Commonwealth did not engage in prosecutorial misconduct, for the reasons set forth herein; thus, we would have nonetheless denied Defendant's motion on its merits in our January 27, 2014 Order had we not concluded at that time that the issue had been waived.

In his post-sentence motion and related statement of issues for appellate review, Defendant refers to the following remark made by the Commonwealth's attorney during her summation to the jury, claiming that it constituted prosecutorial misconduct: "It insults those who are actually victims of sexual assault because it causes us to always question the [']Sandusky [D]efense.[']" (N.T. 9/11/13, p.20). The remark about which the Defendant complains must of course be viewed in its context. See *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. 2008). During the relevant portion of her summation, the Commonwealth's attorney also stated:

> Lie [number two], defendant was sexually assaulted. The defendant wants you to believe that his uncle abused him 40 years ago. Now, let me be very clear. The defendant was never sexually abused. Devon Emory told you that the defendant made all that up in prison. That's how much he hates his uncle. [...] The defendant knows how much damage he's doing. He knows that his uncle is an educator. He knows what that allegation will do to him. And that's why he's doing it. It's a way to continue to victimize Bill. Instead of using a knife, he's using lies. [...] The ["]Sandusky Defense,["] that is also offensive. When you use sexual assault as a way to get out of something that you yourself had done, that's disgusting.

(N.T. 9/11/13, pp.19-20).

In these statements, the Commonwealth's attorney was referring to the Defendant's claim, in his own testimony, that he was sexually abused by the victim in this case when the Defendant was a child, that the victim brought up this past abuse in the course of an argument as a means of threatening the Defendant, and that this remark by the victim precipitated Defendant's actions, thereby creating a justification for the acts which supported the charge of attempted homicide. (See N.T. 9/10/13, pp.118-129). Furthermore, the

Commonwealth's attorney referenced in her remark the testimony of Devon Emory, a witness for the Commonwealth, who testified that the Defendant confided to him in prison that he had intended to kill the victim, his uncle, and that "he was going to say [h]is uncle sexually assaulted him, and [...] he was going to use this as a defense, even though he had told [Emory] that he was never molested." (N.T. 9/10/13, pp.69-70). "He said he was going to use the [']Sandusky [D]efense[']. That's what he told [Emory]. That was his actual words." (N.T. 9/10/13, p.70).

Viewed in this context, we find, as we did at the time of trial, that the objected-to remark was merely a fair response to the issue of sexual assault as raised by the Defendant and as countered by the testimony of Devon Emory. We do not believe that the commentary can be viewed as prosecutorial misconduct. Using a turn of phrase that Emory testified was coined by Defendant himself, the Commonwealth's attorney responded to Defendant's version of events by describing his defense as insulting and offensive. Viewed in the context of the summation as a whole, we do not believe that this commentary had the unavoidable effect of forming in the minds of the jurors a fixed bias or hostility so that they could not objectively weigh the evidence. For these reasons, we believe that we did not err in either overruling Defendant's objection at trial or in denying his post-sentence motion on this issue.

BY THE COURT:

*Paula A. Roscioli*

**PAULA A. ROSCIOLI, J.**