J. S11005/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| IDRIS KINARD, | : | No. 120 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, March 11, 2011,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0002209-2010

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND MUSMANNO, JJ.

JUDGMENT ORDER BY FORD ELLIOTT, P.J.E.:        **FILED MARCH 03, 2016**

Idris Kinard appeals from the judgment of sentence entered on March 11, 2011.  We affirm.

A jury convicted appellant of three counts of attempted murder,[1] three counts of aggravated assault,[2] two violations of the Uniform Firearms Act,[3] and possession of an instrument of crime.[4]  The trial court sentenced appellant to a term of incarceration of 15 to 30 years.

The record reflects that the trial court retired from the bench. Subsequently, the Honorable Daniel J. Anders was administratively assigned

---

[1] 18 Pa.C.S.A. § 901(a).

[2] 18 Pa.C.S.A. § 2702(a).

[3] 18 Pa.C.S.A. § 6106(a)(1), 18 Pa.C.S.A. § 6108.

[4] 18 Pa.C.S.A. § 907(a).

to this matter on appellant's Post-Conviction Relief Act[5] review and this subsequent ***nunc pro tunc*** direct appeal. Judge Anders authored the Pa.R.A.P. 1925(a) opinion. (Trial court opinion, 5/5/15 at 1 n.1.)

Appellant raises two issues for our review:

I. Whether the prosecution engaged in pervasive and persistent misconduct where all of the discovery was not turned over until the day before or the day of trial and where the prosecutor referenced facts not in evidence during sentencing that the Appellant was a member of a gang where there was no such evidence to support the allegation[?]

II. Whether it was error not to allow the jury access to relevant evidence that the perpetrator was a dark skinned African American male when the Appellant is a light skinned African American male where the description of the perpetrator appeared in two separate statements to detectives by two different individuals[?]

Appellant's brief at 6.

Having determined, after careful review, that the learned Judge Anders, in his May 5, 2015 Rule 1925(a) opinion, ably and comprehensively disposes of appellant's issues on appeal, with appropriate reference to the record and without legal error, we affirm on the basis of that opinion.

Judgment of sentence affirmed.

---

[5] 42 Pa.C.S.A. §§ 9541-9546.

J. S11005/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2016

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

FILED

COMMONWEALTH OF PENNSYLVANIA    :     CP-51-CR-0002209-2010

MAY 0 5 2015

    VS.                   :     120 EDA 2015

Criminal Appeals Unit
First Judicial District of PA

IDRIS KINARD                     :

## OPINION

Following a jury trial before the Honorable John O'Grady, Defendant Idris Kinard was convicted of three counts of attempted murder, three counts of aggravated assault, two violations of the Uniform Firearms Act ("VUFA"), and possession of an instrument of crime ("PIC"). The trial court sentenced Defendant to a total of fifteen to thirty years of incarceration. On appeal, Defendant argues that (1) the prosecution engaged in pervasive and persistent misconduct by not turning over all of the discovery until the day before or the day of trial, (2) the trial court erred by precluding two descriptions of the perpetrator as "a dark skinned African American male when the defendant is a light skinned African American male," and (3) the prosecutor referenced facts not in evidence about Defendant's alleged gang membership during sentencing.[1] For the reasons stated below, the Superior Court should affirm the judgment of sentence.

## FACTUAL BACKGROUND

On January 14, 2010, at approximately 5:30pm, Michael Greene, Sr. and his family were exiting their house to go to Target. Michael Greene, Sr. exited the house first, and entered the front driver's seat of his Lincoln Navigator. Defendant Idris Kinard was standing across the street. Greene noticed two unknown males standing directly across the street. A few minutes later Greene's daughter Michelle exited the house and entered the vehicle. Michelle Greene sat behind her father on the driver's side of the second row of seats. A few minutes later, Michael

---

[1] Judge John O'Grady retired. Judge Daniel Anders was administratively assigned this matter on PCRA review and this subsequent *nunc pro tunc* direct appeal. For purposes of this opinion, "trial court" refers to Judge O'Grady.

Greene, Jr. exited the house. As Michael Greene, Jr. headed to the passenger side of the vehicle, Defendant opened fire on Michael Greene, Jr. and shot in Greene's direction numerous times. As Michael Greene, Jr. jumped into the vehicle, Defendant continued to fire at the vehicle hitting the rear passenger tire, the passenger side of the vehicle, the rear window, and the driver's side window. Michael Greene, Sr. and Michelle Green ducked to avoid the gunshots. None of the gunshots hit the intended victims or anyone else. Two of the gunshots struck a neighboring home. Immediately after the shooting, Defendant fled the scene down a set of steps in the direction of Abbottsford Avenue. Defendant dropped his cell phone during his flight. N.T. 01/04/2011 at 37-53, 61-68, 95, 101.

After executing search warrants for Defendant's home and his grandmother's home, police recovered a .45 caliber Colt semiautomatic handgun and a .22 caliber revolver, which matched the two .22 caliber bullets recovered from the scene of the shooting. Police recovered Defendant's DNA from the trigger of the .22 revolver and the back strap handle of the .45 Colt semiautomatic handgun. Police also recovered an iPhone box with a serial number matching the iPhone found at the scene of the shooting. Police recovered letters and papers addressed to Defendant, including Defendant's identification. N.T. 01/05/2011 at 32-42, 188-97.

DISCUSSION

Defendant raises three claims of error on appeal: (1) that the prosecution engaged in pervasive and persistent misconduct by not turning over all of the discovery until the day before or the day of trial, (2) the trial court erred by precluding two descriptions of the perpetrator as "a dark skinned African American male when the defendant is a light skinned African American male," and (3) the prosecutor referenced facts not in evidence about Defendant's alleged gang membership during sentencing.

-2-

1.    The Prosecutor Did Not Engage In Prosecutorial Misconduct Because
      He Timely Turned Over All Discovery Prior To Commencement Of Trial

Defendant argues that the prosecution engaged in "pervasive and persistent misconduct

where all of the discovery was not turned over until the day before or the day of trial[...]." 1925

Statement of Errors. Courts review claims of prosecutorial misconduct under an abuse of

discretion standard. *Commonwealth v. Lopez*, 57 A.3d 74, 84 (Pa. Super. Ct. 2012).

Consideration of claims of prosecutorial misconduct focuses on whether the defendant was

deprived of a fair trial, not a perfect trial. *Commonwealth v. Solomon*, 25 A.3d 380, 383 (Pa.

Super. Ct. 2011).

Here, Defendant's prosecutorial misconduct claim appears to most closely relate to a

*Brady* violation, which—as explained below—has no merit. To establish a *Brady* violation, a

defendant must demonstrate that: (1) the evidence was suppressed by the Commonwealth, either

willfully or inadvertently; (2) the evidence was favorable to the defendant; and (3) the evidence

was material, in that its omission resulted in prejudice to the defendant. *Commonwealth v.

Antidormi*, 84 A.3d 736, 747 (Pa. Super. Ct. 2014). To demonstrate prejudice, the evidence

suppressed must have been material to guilt or punishment. *Id.* at 747. Evidence is material when

there is "a reasonable probability that, had the evidence been disclosed, the result of the trial

could have been different." *Id.*

"The mere possibility that an item of undisclosed information might have helped the

defense, or might have affected the outcome of the trial does not establish materiality in the

constitutional sense." *Id.* (citing *Commonwealth v. McGill*, 832 A.2d 1014 (Pa. 2003)).

Moreover, inadmissible evidence cannot be the basis for a *Brady* violation. *Commonwealth v.

Lambert*, 884 A.2d 848 (Pa. 2005) (citing *Wood v. Bartholomew*, 516 U.S. 1 (1995)). The

relevant inquiry is not whether the defendant would more likely than not have received a

different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Antidormi*, 84 A.3d at 748. A reviewing court is not to review the evidence in isolation, and must evaluate the omission in the context of the entire record. *Id.* (citing *Commonwealth v. Dennis*, 17 A.3d 297 (Pa. 2011)).

Here, there is no dispute that the Commonwealth provided all discovery to defense counsel before trial commenced:

- On March 9, 2010, Defendant received initial discovery.

- On December 3, 2010, Defendant received additional discovery (including the DNA results, the DNA expert report, and some of the phone records) that was recently received by the Commonwealth.

- On December 20, 2010, Defendant received additional discovery (including additional certified phone records) that was recently received by the Commonwealth.

- On December 29, 2010, sent a letter identifying a picture of a phone that belonged to Tiera Bond and correcting defense counsel's misapprehension that this phone belonged to Defendant as discussed at a previous hearing.

- On January 3, 2011, which was the day trial commenced, Defendant received Tiera Bond's statement to detectives. The Commonwealth provided her statement before Defendant was arraigned, *i.e.*, before trial commenced. Defense counsel did not request a continuance to investigate Bond's statement or attempt to locate her.

N.T. 01/04/2011 at 143-149, 152-157; N.T. 01/05/2011 at 4-16; N.T. 01/06/2011 at 56-58. With the exception of Tiara Bond's statement to detectives, all of the discovery was timely turned over to Defendant as soon as that discovery was created or came into the possession of the Commonwealth. N.T. 01/04/2011 at 154; N.T. 01/05/2011 at 5.

Although there was testimony during the trial that Officer Lally prepared a 75-48 police report for Tiera Bond and another female, it was later determined that no such police paperwork existed. Indeed, after Lally testified, the Commonwealth retrieved and reviewed every 75-48 report that was completed in the 39th police district in Philadelphia on January 14, 2010, which was the day of the shooting. Based upon its review of all police paperwork, the Commonwealth

-4-

represented to the trial court that no 75-48 report was ever created for Tiera Bond or the other female. Thus, there was no 75-48 report or any other police paperwork that could be produced as it never existed.

Because all discovery was passed prior to trial and Defendant cannot identify any evidence that was suppressed by the Commonwealth, there is no *Brady* violation. Moreover, all discovery was turned over in a timely fashion to Defendant and as it was received by the Commonwealth with the exception of Bond's statement. Although Bond's statement was turned over on the day that trial commenced, it was passed prior to the actual commencement of trial. Defendant's failure to request a continuance to investigate Bond and her statement cannot form the basis for a claim for prosecutorial misconduct, particularly when the Commonwealth indicated that it would have agreed to a continuance. N.T. 01/05/2011 at 6. As such, Defendant's prosecutorial misconduct claim is without merit.

2. The Trial Court Properly Excluded Defendant's Proposed Hearsay Evidence

Defendant argues that the trial court improperly precluded evidence from two sources that the perpetrator of the shooting was a "dark-skinned African-American male." "The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, [the appellate court] will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law." *B.K. v. J.K.*, 823 A.2d 987, 991-92 (Pa. Super. Ct. 2003). "An abuse of discretion is not merely an error of judgment, but the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice or ill will." *Commonwealth v. Charleston*, 16 A.3d 505, 526 (Pa. Super. Ct. 2011).

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. *Commonwealth v. Kuder*, 62 A.3d 1038 (Pa. 2013). Hearsay is generally

-5-

inadmissible because this evidence lacks guarantees of trustworthiness fundamental to our system of jurisprudence. *Id.* The rule against admitting hearsay stems from its presumed unreliability because the declarant cannot be challenged regarding the accuracy of the statement. *Id.* Nevertheless, certain hearsay exceptions apply in Pennsylvania to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the general hearsay rule. *Id.* Of course, where a statement is offered for a purpose other than proving the truth of its contents, it is not hearsay and not barred by the hearsay rules. *Id.*

Here, Defendant wanted to introduce two statements by declarants that the perpetrator of the shooting was a "dark-skinned African-American male." Instead of calling the declarants who made the statements to testify at trial, Defendant wanted to call Detective Mayer, Detective Grace and Officer Lally to testify regarding the contents of the statement relating to the description of the perpetrator, *i.e.*, a dark-skinned African-American male. N.T. 01/06/2011 at 3-13, N.T. 01/04/2011 at 118-22, 140-42.

The evidence is classic hearsay. The statement and words at issue—dark-skinned African-American male—were uttered by Tiera Bond and Michael Greene, Jr. in out-of-court statements to police during the police investigation immediately following the shooting. Defense counsel argued that it was necessary to admit these statements about skin color and complexion because it would prove that Defendant (who is light skinned) was not the shooter because the shooter was dark skinned. *See* N.T. 01/04/2011 at 153-157; N.T. 01/05/2011 at 4-7. As such, the only purpose for which Defendant argued the statements should be admitted was for the truth of the matter asserted, *i.e.*, that the perpetrator was a dark-skinned African-American male, not light-skinned.

-6-

No exception to the hearsay rule applies including exceptions under Rule 803, Rule 803.1 and Rule 804. Although Rule 803.1 permits prior statements of identification, Rule 803.1(c) requires the declarant to testify at the trial and be subject to cross-examination. Since neither Greene nor Bond testified at trial, their statements could not be admitted through Rule 803.1. Although Rule 804 does provide several hearsay exceptions when a declarant is unavailable at trial, none of those exceptions applied.[2] Thus, although Greene may have been unavailable because he exercised his Fifth Amendment privilege, none of the exceptions under Rule 804 applied. As for Bond, there is no information as to why she was not present for trial, so she does not even meet the criteria for being unavailable under Rule 804.

Thus, the trial court did not abuse its discretion and properly precluded the admission of the hearsay statements by Bond and Greene regarding their descriptions of the perpetrator.[3]

3.      The Trial Court Properly Denied Defendant's Objections
        Based On The Prosecutor's Comments At Sentencing

Defendant argues that the trial court erred by allowing inappropriate remarks by the prosecutor during sentencing. Claims of prosecutorial misconduct are reviewed under an abuse of discretion standard. *Lopez*, 57 A.3d at 84. Claims involving allegedly inappropriate remarks by prosecutors focuses on whether the defendant was deprived of a fair trial, not a perfect trial. *Solomon*, 25 A.3d at 383. A prosecutor's statements to the jury do not occur in a vacuum and must be viewed in context. *Id.* Not every inappropriate remark by a prosecutor constitutes

---

[2] The enumerated exceptions are former testimony, statements under belief of imminent death, statements against interest, statements of personal or family history, and statements offered against a party that wrongfully caused the declarant's unavailability. *See* Rule 804(b).

[3] Even assuming the trial court's evidentiary ruling was improper, this alleged error would constitute harmless error given the overwhelming evidence of Defendant's guilt that is summarized *infra* at 1-2. *See generally Commonwealth v. Green*, 76 A.3d 575, 582 (Pa. 2013) (stating that harmless error exists if the reviewing court is convinced beyond a reasonable doubt from the record that: (1) the error did not prejudice the defendant or the prejudice was de minimis, (2) the erroneously admitted evidence was merely cumulative of other untainted evidence that was substantially similar to the erroneously admitted evidence, or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the guilty verdict.").

-7-

reversible error. *Commonwealth v. Harris*, 884 A.2d 920, 927 (Pa. Super. Ct. 2005). Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict. *Commonwealth v. Rolan*, 964 A.2d 398, 410 (Pa. Super. Ct. 2008).

Here, Defendant argues that during sentencing the prosecutor cited to several facts not in evidence regarding Defendant's alleged membership in a gang. Defendant repeatedly objected to the prosecutor's statements during the sentencing hearing. N.T. 03/11/2011 at 9-12.

Even assuming *arguendo* that the prosecutor's statements were improper, Defendant cannot prove prejudice in his sentencing. First, Defendant received a downward departure from the applicable sentencing guidelines for each conviction. So, although the sentencing guidelines called for a minimum sentence of 78 months to 96 months of incarceration, plus or minus twelve months of incarceration, the trial court sentenced Defendant to a minimum sentence of only 60 months on each count of attempted murder. Thus, Defendant received not only a fully mitigated sentence, but actually a sentence that departed below the fully mitigated range. The trial court imposed the lowest possible sentence available to him.

Second, although the trial court imposed consecutive sentences for the three attempted murder convictions, a challenge to the exercise of a sentencing judge's discretion to impose sentences consecutively does not even raise a substantial question on direct appeal as to the appropriateness of the sentence. *Commonwealth v. Treadway*, 104 A.3d 597 (Pa. Super. Ct. 2014).

Third, the trial court did not rely on the prosecutor's argument that Defendant was an alleged gang member when he explained the factors he considered in imposing the sentence. N.T. 03/11/2011 at 27-29. Although he referenced the "community of 30th and Allegheny," this was an entirely appropriate consideration under the sentencing code and was discussed without

-8-

reference to Defendant's alleged gang membership. *Id.; see* 42 Pa.C.S. § 9721 (when sentencing a defendant, the trial court "shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." ).

Thus, Defendant cannot prove that he suffered any prejudice during the sentencing hearing.

CONCLUSION

Based on the foregoing, the judgment of sentence should be affirmed.

BY THE COURT:

DANIEL J. ANDERS, JUDGE
Dated: May 5, 2015