J-A17046-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEAN P. GALLAGHER, | |
| Appellant | No. 2064 EDA 2015 |

Appeal from the Judgment of Sentence June 9, 2015
in the Court of Common Pleas of Montgomery County
Criminal Division at No.: CP-46-CR-0000780-2014

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                     **FILED SEPTEMBER 01, 2016**

Appellant, Sean P. Gallagher, appeals from the judgment of sentence imposed following his bench conviction of driving under the influence of alcohol (DUI).[1]  We affirm.

The trial court summarized the facts of this case as follows:

On November 23, 2013, at approximately 1:00 a.m., Appellant arrived at Hattrick's Bar in Hatfield Township with his roommate, Tim Hosak.  Appellant consumed alcohol at Hattrick's Bar until he left at approximately 2:15 a.m.  As Appellant was leaving the Hattrick's parking pot, Appellant's vehicle rolled back and struck Kelly Fiorvanti's[2] white Volvo station wagon, driven by James Contrervo[, Fiorvanti's then-partner].  Appellant failed

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1).

[2] Fiorvanti's surname is alternately spelled "Fioravanti" in the record.  For clarity and consistency, we have adopted the trial court's spelling.

to stop his car upon impact and continued driving. Mr. Contrervo followed Appellant out of the Hattrick's parking lot and confronted Appellant about striking Ms. Fiorvanti's vehicle. Eventually, both parties pulled into the Hatfield Pizza parking lot. After a brief argument, Mr. Contrervo assaulted Appellant and used Ms. Fiorvanti's vehicle to push Appellant's car over a concrete curb.[3]

After Mr. Contrervo left, Appellant got back into his vehicle, drove home and called the police. Corporal Michael Sloan ("Cpl. Sloan") of the Hatfield Township Police Department arrived at Appellant's residence around 2:38 a.m. Appellant told Cpl. Sloan that while returning from a friend's house, he was rear[-]ended by a white Volvo and then assaulted by the driver. While they were talking, Cpl. Sloan noticed that Appellant appeared intoxicated, smelled of alcohol and was slurring his speech. Cpl. Sloan then asked Appellant to accompany him so that he could identify Mr. Contrervo, who had been stopped by Officer [Kevin] Fox. While Cpl. Sloan was driving Appellant to Mr. Contrervo's location, the odor of alcohol emanating from Appellant forced him to roll down the windows in his vehicle.

After Appellant identified Mr. Contrervo as his assailant, Cpl. Sloan was informed by Ms. Fiorvanti that she saw Appellant in Hattrick's Bar. Appellant then admitted to Cpl. Sloan that he was at Hattrick's Bar. Cpl. Sloan also spoke with Michael Bagnell, a bartender at Hattrick's Bar, who stated that Appellant purchased multiple drinks. Subsequently, Cpl. Sloan requested that Appellant perform field sobriety tests. Appellant's performance on the field sobriety tests further indicated to Cpl. Sloan that Appellant was intoxicated. Appellant was then arrested for DUI and taken to Towamencin Police Department for a breath test.

Once Appellant arrived at the Towamencin Police Department Fast Track Center, Sergeant Robert Baer, of the Montgomery County Sheriff's Office, began the breath testing

_____

[3] Portions of the incident were captured on videotape surveillance footage. (**See** N.T. Trial, 1/08/15, at 14, 25, 44; N.T. Trial, 4/13/15, at 66-67).

procedures. Sergeant Baer read Appellant the ***O'Connell***[4] Warnings, contained in the DL-26 [implied consent] form. After many opportunities to sign the form and consent to testing, Appellant refused the test.

(Trial Court Opinion, 10/26/15, at 1-2) (footnote omitted).

Appellant proceeded to a bench trial on January 8, 2015, and the trial was continued after the Commonwealth completed its case in chief due to timing issues. Trial resumed on April 13, 2015, and the court found Appellant guilty of DUI (second offense, refusal). On June 9, 2015, it sentenced him to a term of not less than ninety days nor more than six months' incarceration. This timely appeal followed.[5]

Appellant raises the following issues and sub-issues for our review:

I. Did the trial court violate [Appellant's] constitutional right to confront witnesses, guaranteed by the Sixth Amendment of the United States Constitution, by limiting trial counsel's cross-examination of Ms. Fior[]vanti, Cpl. Sloan, and [Officer] Fox?

II. Did the trial court abuse its discretion, through a misapplication of law, in the following evidentiary rulings, and did [Appellant] suffer prejudice as a result of this misapplication of law?

(A) excluding [Appellant] from introducing photographs, taken by [Officer] Fox[] documenting

_____

[4] ***Commonwealth Dep't of Transp., Bureau of Traffic Safety v. O'Connell***, 555 A.2d 873 (Pa. 1989).

[5] The court granted counsel for Appellant leave to withdraw, and newly-appointed counsel filed a timely final concise statement of errors complained of on appeal on September 21, 2015, in which she incorporated by reference a number of issues raised in previously filed statements. The court entered an opinion on October 26, 2015. ***See*** Pa.R.A.P. 1925.

[Appellant's] injuries at the time he was perceived to be intoxicated, and

(B) permitting the Commonwealth to cross-examine [Appellant] concerning his character for peacefulness on the theory that [Appellant] had "opened the door" when he responded to the Commonwealth's immediately prior question concerning his character for peacefulness?

III. Did the trial court abuse its discretion, through a misapplication of law, by permitting the Commonwealth, during its closing argument, to give a medical opinion as to whether the specific injuries suffered by [Appellant] constituted "traumatic brain injury," where the Commonwealth had never attempted to call an expert witness to provide such a medical opinion, and was [Appellant] prejudiced as a result of this misapplication of law?

(Appellant's Brief, at 10).

In Appellant's first issue, which is tri-part, he argues the trial court violated his right to confront witnesses, guaranteed by the Sixth Amendment to the United States Constitution, by limiting defense counsel's cross-examination of Ms. Fiorvanti, Cpl. Sloan, and Officer Fox. (*See* Appellant's Brief, at 23). We will discuss his claims relating to each individual *seriatim*.

We begin by addressing Appellant's claim with respect to Ms. Fiorvanti. Appellant argues the court erred in preventing defense counsel from cross-examining Fiorvanti regarding any bias she harbored against Appellant because of her relationship with Contrervo. (*See id.* at 23-27). The trial court determined Appellant waived this claim for failure to raise it with specificity in his Rule 1925(b) statement. (*See* Trial Ct. Op., at 7). After review, we agree.

Pennsylvania Rule of Appellate Procedure 1925(b)(4) provides in pertinent part: "The Statement shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). "[A] Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Commonwealth v. Freeman*, 128 A.3d 1231, 1248 (Pa. Super. 2015) (citations omitted) (finding issue waived for appellant's failure to raise it with specificity in Rule 1925(b) statement).

Here, in his Rule 1925(b) statement, Appellant vaguely asserts trial court error in "[l]imiting the cross-examination of Kelly Fiorvanti, the only witness who claims she saw [Appellant] drinking an alcoholic beverage before he drove." (*See* Rule 1925(b) Statement, 8/03/15, at unnumbered page 1 ¶ 3). Appellant does not identify how the court purportedly improperly limited cross-examination of Fiorvanti, and he makes no mention of her potential bias due to her relationship with Mr. Contrervo. (*See id.*). As the trial court notes, the Commonwealth objected several times during defense counsel's cross-examination of Fiorvanti, and Appellant failed to identify which of the court's rulings he wished to challenge in his Rule 1925(b) statement. (*See* Trial Ct. Op., at 7; *see also* N.T. Trial 1/08/15, at 29-36). Thus, we conclude Appellant waived his claim pertaining to cross-

- 5 -

examination of Fiorvanti. **See** Pa.R.A.P. 1925(b)(4)(ii), (vii); **Freeman**, **supra** at 1248.

We next address Appellant's claim regarding Cpl. Sloan, in which he argues the trial court erred in failing to permit defense counsel to cross-examine the corporal as to whether he had observed Appellant operating his vehicle unsafely. (**See** Appellant's Brief, at 27-30). Appellant maintains that this questioning was warranted because Cpl. Sloan had testified on direct examination to his opinion that "[Appellant] was in fact incapable of safe driving." (**Id.** at 27 (quoting N.T. Trial, 1/08/15, at 81); **see id.** at 28). He claims "the fact that Cpl. Sloan had not seen [Appellant] drive, while not dispositive on [his] guilt, directly addressed Cpl. Sloan's prior testimony that he believed [Appellant] incapable of safe driving." (**Id.** at 30). This argument does not merit relief.

"The Confrontation Clause of the Sixth Amendment, made applicable to the States *via* the Fourteenth Amendment, provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . .'" **Commonwealth v. Yohe**, 79 A.3d 520, 530–31 (Pa. 2013), *cert. denied*, 134 S.Ct. 2662 (2014) (case citation and footnote omitted). With respect to cross-examination of witnesses, "[a] trial court has discretion to determine both the scope and the permissible limits of cross-examination." **Commonwealth v. Briggs**, 12 A.3d 291, 335 (Pa. 2011), *cert. denied*, 132 S.Ct. 267 (2011) (citation omitted). "The trial judge's exercise of judgment in setting those limits will not be reversed in

the absence of a clear abuse of that discretion, or an error of law." ***Id.*** (citation and internal quotation mark omitted). "A trial court may limit the scope of cross-examination to prevent repetitive inquiries and cumulative testimony." ***Commonwealth v. Conde***, 822 A.2d 45, 51 (Pa. Super. 2003) (citation omitted).

Here, on cross-examination, Cpl. Sloan unequivocally testified that he "never saw [Appellant] drive" on the night of the incident. (N.T. Trial, 1/08/15, at 97). When defense counsel further attempted to question Cpl. Sloan regarding his observation of Appellant's driving, the Commonwealth objected, and the trial court sustained the objection. (***See id.*** at 97-98). The court explained:

> Cpl. Sloan previously testified that he did not see Appellant driving. Therefore, he could not have seen Appellant drive unsafely and the testimony would have been cumulative. Furthermore, a police officer is allowed to render an opinion of whether someone was capable of safely driving regardless of whether they saw the person drive. [***See Commonwealth***] ***v. Neiswonger***, 488 A.2d 68, 70 (Pa. Super. 1985) [(holding "that a police officer, if he has perceived a defendant's appearance and acts, is competent to testify to his opinion as to the defendant's state of intoxication and to his ability to drive a vehicle safely," regardless of whether the officer observed the defendant driving)].

(Trial Ct. Op., at 11).

Upon review, we agree with the trial court, and conclude that it did not abuse its discretion in limiting defense counsel's repetitive inquiries of Cpl. Sloan to prevent cumulative testimony where the record plainly establishes that he did not observe Appellant driving at all. ***See Briggs***, ***supra*** at 335;

*Conde*, *supra* at 51. Therefore, Appellant's argument with respect to Cpl. Sloan fails.

Finally, we address Appellant's confrontation clause claim with respect to Officer Fox. Appellant argues the trial court improperly limited defense counsel's cross-examination of Officer Fox regarding the potential impact of cold weather on Appellant's performance of field sobriety tests. (*See* Appellant's Brief, at 31-32; *see also* N.T. Trial, 1/08/15, at 50-51). This argument lacks merit.

Pennsylvania Rule of Evidence 602 provides, in pertinent part, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Pa.R.E. 602. "Personal or firsthand knowledge is a universal requirement of the law of evidence." *Id.*, cmt (citation omitted).

Here, Officer Fox testified that he did not administer the field sobriety tests to Appellant; Cpl. Sloan did. (*See* N.T. Trial, 1/08/15, at 40). Although he was present when Cpl. Sloan administered the tests, his "attention was divided at the time because [he] was dealing with two other subjects that were in another vehicle[.]" (*Id.* at 41; *see id.* at 40, 42). Therefore, because Officer Fox lacked firsthand knowledge of the field sobriety tests, the trial court properly limited defense counsel's line of questioning in this area. *See* Pa.R.E. 602. Furthermore, a review of the record reveals that the court **did allow** defense counsel to ask Cpl. Sloan whether he thought "the fact it was cold out could have impeded

- 8 -

[Appellant's] ability to perform the field sobriety tests?" (N.T. Trial, 1/08/15, at 95 (to which Cpl. Sloan responded "No.")). Accordingly, the court properly permitted the witness with firsthand knowledge of the field sobriety tests to testify regarding the impact of the weather. Upon review, we discern no abuse of discretion or error of law in the trial court's disposition of this issue. **See Briggs**, **supra** at 335. Appellant's argument with respect to Officer Fox fails, and his first issue does not merit relief.

In his second issue, Appellant challenges two of the trial court's evidentiary rulings, which we will address *seriatim*. Appellant first argues the trial court abused its discretion in precluding defense counsel from introducing photographs taken by Officer Fox showing Appellant's head injuries, for the purpose of cross-examining the officer as to whether those injuries could have impacted Appellant's ability to perform field sobriety tests. (**See** Appellant's Brief, at 33-34). Appellant further contends the court's preclusion of this line of inquiry was prejudicial because it could have affected the verdict. (**See id.** at 37-38). This sub-issue merits no relief.

> A judge has broad discretion concerning the conduct of a trial and particularly with regard to the admission or exclusion of evidence. Generally, evidence is admissible if it is relevant, *i.e.*, it must tend to prove or disprove a material fact in issue, tend to make such a fact more or less probable, or afford the basis or support for a reasonable inference regarding the existence of a material fact. This standard applies equally to the admissibility of photographs. A photo must, however, be verified by either the person who took it or one sufficiently knowledgeable to testify the picture accurately represents the object depicted as it existed at the time of the event in question. Finally, the admissibility of photographs is a matter within the discretion of

the trial court whose decision will not be disturbed absent an abuse of discretion.

***Commonwealth v. McClintock***, 639 A.2d 1222, 1225–26 (Pa. Super. 1994) (citations omitted).

> The Pennsylvania Rules of Evidence require a proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). Specifically, the Rules state that . . . a "witness with knowledge" may testify that an item is what it is claimed to be. ***Id.*** at 901(b)(1). When the evidence in question is a photograph, it may be authenticated by testimony from a person who has sufficient knowledge that the photograph fairly and accurately reflects what the proponent is purporting that photograph to reflect. . . .

***Commonwealth v. Loughnane***, 128 A.3d 806, 813 (Pa. Super. 2015) (case citations omitted).

Here, during cross-examination of Officer Fox, defense counsel sought to introduce photographs of Appellant's head injuries.[6] The Commonwealth objected to their admission because it did not believe that the photographs were those provided in discovery, taken on the night of the incident. (***See*** N.T. Trial, 1/08/15, at 48-49). The court precluded defense counsel from asking Officer Fox questions about the photographs because counsel could not provide any information whatsoever regarding their authenticity. (***See id.***). However, during the Commonwealth's direct examination of Cpl. Sloan, it introduced into evidence photographs of Appellant's facial injuries.

---

[6] It is unclear from the record who took the photographs at issue. Although Appellant claims that Officer Fox took the photographs, (***see*** Appellant's Brief, at 33), the Commonwealth and the trial court maintain that Cpl. Sloan took them. (***See*** Commonwealth's Brief, at 22 n.1; Trial Ct. Op., at 8).

(*See id.* at 83, 85-86). Defense counsel then cross-examined Cpl. Sloan as to whether the blows to the head Appellant sustained could have caused him to be "punchy or uncoordinated"; whether "the fact that [Appellant] was punched in the head [six] or [seven] times could have played a part in his behavior?"; whether he thought "[the injuries] could have played a part[?]"; and whether "any of the blows to the head affected the way he reacted in any way?" (*Id.* at 89-90). When the Commonwealth objected after this prolonged line of questioning, the court sustained the objection and stated that "[b]ecause [Cpl. Sloan] is not a medical professional, it is not going to carry a lot of weight with me what he thinks. What I did hear him say was that he offered numerous times to provide medical care or at least medical attention[.]" (*Id.* at 91).

Thus, the record plainly reflects that the trial court admitted properly authenticated photographs of Appellant's facial injuries; that defense counsel engaged in extensive cross-examination as to whether those injuries could have impacted Appellant's performance of field sobriety tests; and that the court expressly determined that the opinion of a non-medical professional regarding the impact of Appellant's injuries on his actions was not significant in reaching its verdict. We therefore conclude that the court did not abuse its broad discretion with respect to admission of the photographs of Appellant's head injuries. ***See McClintock***, ***supra*** at 1225–26.

We next turn to Appellant's second sub-issue, in which he argues the trial court abused its discretion by allowing the Commonwealth to cross-

- 11 -

examine him regarding his character for peacefulness, when he never presented prior evidence of his peacefulness. (**See** Appellant's Brief, at 43-46).[7]  Appellant further contends that he was prejudiced by the Commonwealth's improper line of questioning. (**See id.**).  We disagree.

Pennsylvania Rule of Evidence 404(a) provides, in pertinent part:

**(a)  Character Evidence**.

**(1) Prohibited Uses**. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

**(2) Exceptions for a Defendant [] in a Criminal Case**. The following exceptions apply in a criminal case:

> (A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it[.]

Pa.R.E. 404(a)(1), (2)(A).

"The rationale [for the general prohibition against use of character evidence] is that the relevance of such evidence is usually outweighed by its tendency to create unfair prejudice, particularly with a jury."  Pa.R.E. 404, cmt.  However, if the defendant first offers evidence of a relevant character trait of himself, the Commonwealth may offer evidence to rebut this character trait.  **See** Pa.R.E. 404(a)(2)(A); **see also Commonwealth v.**

_____

[7] As previously noted, we review a trial court's ruling with respect to the scope of cross-examination for an abuse of discretion or error of law. **See Briggs**, **supra** at 335.

- 12 -

***Reyes-Rodriguez***, 111 A.3d 775, 781 (Pa. Super. 2015) (*en banc*), *appeal denied*, 123 A.3d 331 (Pa. 2015).

Here, during the Commonwealth's cross-examination of Appellant, the following exchange took place:

Q. Why didn't you defend yourself [after the Contrervo assault]?

A. **I'm not that kind of person**.

Q. All right. Let's go from there. What type of person are you?

A. I'm cool demeanor . . . to be honest with you, that was a complete shock to me. I didn't even see it coming. I was hit from behind.

Q. Well, you agree what you were shoved first, right?

A. Which is why I started walking away. That's the kind of person I am.

Q. You're the kind of person to walk away?

[Defense Counsel]: Objection, to the relevance of what kind of person he is.

THE COURT: No, I'm going to overrule the objection. I want to hear this.

Q. So, [Appellant], you're the kind of person to walk away from a fight, correct?

A. (No response.)

Q. That's what you just said?

A. I am.

\*    \*    \*

- 13 -

Q. . . . So you could have gotten in your vehicle and locked the doors. How come you didn't do that?

A. (No response.)

\* \* \*

Q. And once you got [Contrervo's] license plate you kept circling that vehicle; isn't that correct?

A. Yeah. I wanted to like jot it down in my memory.

Q. And, in fact, we saw on the video that when Mr. Contre[r]vo went to back out and was actually on the street, that you and Tim [Hosak] walked down towards his vehicle, isn't that what we saw in the video?

A. We were walking back to my vehicle.

(N.T. Trial, 4/13/15, at 48-50) (emphasis added).

The trial court explained that, "[b]ecause Appellant introduced the subject of his own character, this [c]ourt allowed the Commonwealth to inquire further and attempt to impeach his credibility." (Trial Ct. Op., at 11-12). Upon review, we agree with the court that, by responding to the Commonwealth's initial question by describing the "kind of person" he is, Appellant opened the door for the Commonwealth to introduce evidence to rebut his testimony. (N.T. Trial, 4/13/15, at 48). Therefore, the scope of cross-examination by the Commonwealth was proper. *See Briggs*, *supra* at 335. Furthermore, because the court had viewed Appellant's actions during the incident with Contrervo on videotape, Appellant cannot establish prejudice. *See* Pa.R.E. 404, cmt. Accordingly, Appellant's second sub-argument does not merit relief.

- 14 -

In his third issue, Appellant argues the trial court abused its discretion by permitting the Commonwealth to render a medical opinion during closing argument. (**See** Appellant's Brief, at 46-47). He takes issue with the Commonwealth's statement that Appellant did not suffer "a traumatic brain injury" because of his altercation with Mr. Contrervo. (**Id.** at 47 (quoting N.T. Trial, 4/13/15, at 57) (emphasis omitted)). Appellant acknowledges that the Commonwealth was referring to his medical records, which the court admitted by stipulation of the parties, and explains that his objection was not directed to the contents of the records themselves, but to the prosecutor's interpretation of them. (**See id.** at 47-48). This issue does not merit relief.

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one.
>
> [A] prosecutor's arguments to the [fact-finder] are [generally] not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the [fact-finder], forming in [its] mind[] fixed bias and hostility towards the accused which would prevent [it] from properly weighing the evidence and rendering a true verdict.
>
> A prosecutor must have reasonable latitude in fairly presenting a case to the [fact-finder] and must be free to present [his] arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we

> must look at them in the context in which they were made.

***Commonwealth v. Solomon***, 25 A.3d 380, 383 (Pa. Super. 2011), *appeal denied*, 40 A.3d 1236 (Pa. 2012) (citations omitted).

Furthermore,

> In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

***Commonwealth v. Hogentogler***, 53 A.3d 866, 878 (Pa. Super. 2012), *appeal denied*, 69 A.3d 600 (Pa. 2013) (citations omitted).

Here, during closing argument, defense counsel attributed Appellant's sobriety test failure to the fact that he was "punched and knocked down three or four times, [which] might have some consequences in terms of [his] ability to move or talk or anything else." (N.T. Trial, 4/13/15, at 55). In response, the Commonwealth stated:

> [Appellant's medical record] goes on further to say what the final diagnosis was. It was a fracture, and it was a subconjunctival hemorrhage, which as if you'll read, is a blood in the white part of the eye. And that's it. Nothing about a concussion. Nothing about a traumatic brain injury—

(***Id.*** at 57).

On independent review, we conclude that when viewed in context, the Commonwealth's remarks were a fair comment on Appellant's medical records, and were also a fair response to points made in the defense closing.

*See Hogentogler*, *supra* at 878; *Solomon*, *supra* at 383.  Therefore, we discern no abuse of discretion in the trial court's disposition of this issue.

*See Solomon*, *supra* at 383.  Appellant's final issue does not merit relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/1/2016